**GULF STATES UTILITIES COMPANY, Plaintiff–Appellant,**

v.

**ECODYNE CORPORATION et al., Defendants–Appellees.**

No. 79–3342.

United States Court of Appeals, Fifth Circuit.

Unit A

Jan. 30, 1981.

Stockwell, Sievert, Viccellio, Clements & Shaddock, Robert W. Clements, Lake Charles, La., for plaintiff–appellant.

Scofield, Bergstedt & Gerard, Lake Charles, La., for Ecodyne Corp.

Faris, Ellis, Cutrone, Gilmore & Lautenschlaeger, Clarence A. Frost, New Orleans, La., for Lloyd's of London.

Before COLEMAN, Chief Judge, CHARLES CLARK and REAVLEY, Circuit Judges.

CHARLES CLARK, Circuit Judge:

In this action tried to the court seeking damages for defective design and faulty selection of materials, the district court excluded evidence regarding failures and material defects related to similar design work and material procurement by the defendant. We vacate the judgment of the district court.

Pursuant to a contract, Ecodyne Corporation, supplied design services and materials and supervised construction of two cross-flow induced draft cooling towers for Gulf States Utilities Company. The towers were completed and placed in commercial operation in July 1970. One of the towers (Tower A) suffered two structural failures in November 1973. The other tower (Tower B) was taken out of operation shortly thereafter. Gulf States brought suit against Ecodyne claiming that Ecodyne had negligently designed the towers and had negligently selected the materials used in constructing the towers, which acts of negligence were claimed to have been the cause of the failure of Tower A. The district judge held that Gulf States had failed to carry its burden of proof regarding the cause of the structural failure. Judgment was accordingly rendered for Ecodyne.

During the course of the bench trial, Gulf States attempted to prove that similar towers built by Ecodyne had experienced similar structural failures. Gulf States also offered a copy of a complaint filed by Ecodyne in the Superior Court of California, against the California Redwood Association, et al., Ecodyne's supplier of redwood. That complaint alleged that the redwood supplied to Ecodyne was inferior in quality and that misrepresentations were made to Ecodyne regarding the quality of the redwood. The allegations strongly implied that the cause of failures of several towers built by Ecodyne, including Tower A built for Gulf States, was the failure of the wood to meet specifications. Gulf States makes the same allegations against Ecodyne in the instant case.

As the district judge recognized, this evidence was relevant under Fed.R.Evid. 401. *See Ramos v. Liberty Mutual Insurance Co.,* 615 F.2d 334, 338–339 (5th Cir. 1980). The district judge refused to admit the proof of other failures and the California complaint into evidence on the ground that, although relevant, the evidence was inadmissible under Fed.R.Evid. 403. The district judge reasoned that the evidence would be prejudicial to a jury and that since he would not let a jury hear the evidence, he should not hear it in a bench trial.[1]

■ The exclusion of this evidence under Rule 403's weighing of probative value against prejudice was improper. This portion of Rule 403 has no logical application to bench trials.[2] Excluding relevant evidence in a bench trial because it is cumulative or a waste of time is clearly a proper exercise of the judge's power, but excluding relevant evidence on the basis of "unfair prejudice" is a useless procedure. Rule 403 assumes a trial judge is able to discern and weigh the improper inferences that a jury might draw from certain evidence, and then balance those improprieties against probative value and necessity. Certainly, in a bench trial, the same judge can also exclude those improper inferences from his mind in reaching a decision. The significant question is whether the trial judge's action here produces an error or defect that affected substantial rights of Gulf States. 28 U.S.C. § 2111; Fed.R.Civ.P. 61.[3] The judge heard the offer of proof but said he would not consider this evidence in making his factual determinations. We have no choice but to believe him. He is trained to recognize and to exclude those matters which the rules of evidence require be discarded. Indeed, in this very case the trial judge acknowledged the possibility that this court might disagree with his ruling and direct him to consider this evidence. That possibility has now materialized. The major policy under-

---

1. Gulf States' brief seems to imply that the trial judge may have excluded this evidence thinking that he had a jury present. We reject this notion completely.

2. Counsel for Ecodyne point us to many of our cases holding that a trial judge has broad discretion under Rule 403 to exclude or admit relevant evidence. These cases, involving civil and criminal *jury* trials, are not on point. *See,*

*e. g., King v. Ford Motor Co.,* 597 F.2d 436, 445 (5th Cir. 1979); *U. S. v. Frick,* 588 F.2d 531, 537 (5th Cir. 1979); *U. S. v. McDaniel,* 574 F.2d 1224, 1227 (5th Cir. 1978); *U. S. v. Tidwell,* 559 F.2d 262, 267 (5th Cir. 1977).

3. *See also* 11 Wright and Miller, Federal Practice and Procedure, Civil §§ 2881–83, 2885 (1973).

lying the harmless error rule is to preserve judgments and avoid waste of time. Discarding a jury verdict is extremely wasteful. Requiring a district judge to examine more evidence and re-evaluate his decision is not nearly so prodigal.

Gulf States also claims that the district court erred in articulating and applying the burden of proof. Their argument is bolstered by the statement of the district judge that "no one is able to pinpoint the precise cause" of the tower's failure. Reading the ruling as a whole, however, we are convinced that the district judge correctly applied the proper test. He noted from *Lombard v. Sewerage and Water Board of New Orleans*, 284 So.2d 905, 913 (La.1973), that to be actionable a cause must be a substantial cause in fact, but it need not be the sole cause. The district court then found that design overload was a relatively minor cause and that Gulf States' theory was no more plausible than other theories of the mechanics of collapse which would not lead to Ecodyne's liability. This led to the conclusion that Gulf States had not carried the plaintiff's burden of proving that its theory was more likely true than not. We agree. Under the evidence admitted, Gulf States did not carry its burden. We express no opinion as to whether Gulf States will carry its burden when the evidence erroneously excluded is considered. That is for the district court to determine anew.

Gulf States also challenges the alternate ruling of the district court that should Gulf States prevail on appeal on the liability issue, their recovery would not include any damages for Tower B, which was voluntarily taken out of operation. In the opinion of the district court, Tower B might still be operating today had it not been dismantled. The district court held there was no proof that the materials used in Tower B were the same as those used in Tower A, even though Ecodyne's Supervisor of Quality Assurance testified that all material for both towers came through the Santa Rosa yard. Since new considerations on remand could also affect the district court's view on this matter, we vacate this alternate ruling.

Our disposition of this appeal requires that we address two other issues. Ecodyne moved the district court for summary judgment, claiming that this action had prescribed under the applicable Louisiana statute and that the warranty provisions of the contract provided Gulf States' sole remedy.

■ The district court properly looked to Louisiana law to determine the question of prescription. Though prescription in civil law does not precisely correlate to limitations in common law, it is sufficiently equivalent to require us, in this diversity suit, to consult Louisiana law. *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 109, 65 S.Ct. 1464, 1470, 89 L.Ed.2d 2079, 2086 (1945).

■ Ecodyne argued that the one-year prescription found in Article 2534, La.Civ. Code Ann. (West 1952), applied to this action. That article provides: "The redhibitory action must be instituted within a year, at the farthest, commencing from the date of sale." Redhibition is defined in Article 2520:

> *Redhibition* is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice.

Thus, to be a redhibitory action the underlying transaction must be a sale. See *Yeargain v. Blum*, 144 So.2d 756 (La.App.1962). The district court held Article 2534 inapplicable because it concluded that the contract between Gulf States and Ecodyne was not a contract of sale. This conclusion was based upon Ecodyne's duties to supply materials, to design the towers, to supervise the erection, installation, and preliminary operation, and to verify the design performance of the towers. The district court noted that a contrary characterization was made, on similar facts, in *FMC Corp. v. Continental Grain Co.*, 355 So.2d 953 (La.App.1977), but correctly distinguished *FMC* from the instant case. The issue before the *FMC* court was not prescription but the applicability of

the statutory warranty for buildings. The court held that the warranty was inapplicable to sales contracts and, alternatively, that it had been waived. While the first alternative holding might point us to a similar characterization of this contract, that holding is accompanied by so much undermining language that we would hesitate to rely on it. *See id.* at 957. Further, the same Louisiana Court of Appeals that decided *FMC* had previously decided *Yeargain v. Blum, supra,* and specifically refused to apply the redhibitory prescription period to defective performance under a building and installation contract. 144 So.2d at 758. The district court's denial of Ecodyne's motion for summary judgment on the ground of prescription was correct. Since Ecodyne presses for no other limitation provision, we need not determine exactly which prescriptive article would apply to this cause.

■ Finally, Ecodyne argues that the sole remedy of Gulf States is that found in the contract: "The Seller agrees . . . that the Seller shall replace, repair or make good, without cost to the Purchaser, any defects or faults arising within one year after date of acceptance of articles furnished hereunder . . . resulting from imperfect or defective work done or materials furnished by the Seller." This provision in the original "purchase order" was modified by the parties by adding this language: "With regard to Terms and Conditions, Item # 5, Guarantee, we understand [Ecodyne's] Warranty will be for a period of twelve (12) months after startup, but not to exceed eighteen (18) months after delivery of material to jobsite."

Article 2762, La.Civ.Code Ann. (West 1952), provides a statutory warranty[4] that all parties agree is applicable unless it has been waived.[5] Ecodyne again cites *FMC* and asserts that *FMC* held that the language in the contract at issue there was sufficient to supplant the statutory warranty. The warranty provision in FMC's contract contained a crucial sentence not found in Ecodyne's contract: "The foregoing is in lieu of all other warranties (including that of merchantability), whether express or implied." *FMC,* 355 So.2d at 956. *FMC* is distinguishable on this account alone.

Even construing the language in the Ecodyne–Gulf States contract so as to resolve any ambiguity against Gulf States,[6] as Ecodyne urges us to do, that language does not exclude, modify, or limit the statutory warranty. The language, quoted above, does not even hint that it is intended to supply the sole warranty or to limit or exclude other warranties. We think the principle that the warranty of fitness implied by Article 1764, La.Civ.Code Ann. (West 1952), may be waived only by explicit language[7] would be applied to this construction contract by Louisiana courts.

Because the district court correctly denied Ecodyne's motion for summary judgment on the ground of the exclusive remedy in the contract's warranty clause, we need not address the district court's alternative ground for denial, that the contract's warranty provisions do not apply to design defects.

We vacate the judgment of the district court and remand the case for further proceedings, leaving to the district court's discretion determination of what further hearings or proceedings are necessary upon remand.

### VACATED and REMANDED.

---

4. Article 2762 reads:

    If a building, which an architect or other workman has undertaken to make by the job, should fall to ruin either in whole or in part, on account of the badness of the workmanship, the architect or undertaker shall bear the loss if the building falls to ruin in the course of ten years, if it be a stone or brick building, and of five years if it be built in wood or with frames filled with bricks.

5. It is not against Louisiana's public policy for parties to a contract to waive the statutory warranty. *See Freeman v. Department of Highways,* 253 La. 105, 217 So.2d 166 (1968).

6. The contract form was supplied by Gulf States' agent, Stone & Webster Engineering Corporation.

7. *See Guillory v. Morein Motor Co., Inc.,* 322 So.2d 375 (La.App.1975).