Karen **SCHULTZ**, Plaintiff–Appellant,

v.

G. William **BUTCHER**, III; Edward H. Maass; "The Spirit of Mount Vernon"; Spirit Cruises, Incorporated, Defendants–Appellees.

Karen **SCHULTZ**, Plaintiff–Appellee,

v.

"The **SPIRIT OF MOUNT VERNON**"; Spirit Cruises, Incorporated, Defendants–Appellants,

G. William Butcher, III; Edward H. Maass, Defendants–Appellees.

Nos. 93–1202, 93–1229.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 9, 1994.

Decided May 24, 1994.

---

**ARGUED:** David Rosenblum, Rosenblum & Rosenblum, Alexandria, VA, for appellant. Mark Travis Coberly, VandeVenter, Black, Meredith & Martin, Norfolk, VA, for appellees Spirit of Mount Vernon and Spirit Cruises; Gary Brooks Mims, Brault, Palmer, Grove, Zimmerman, White & Mims, Fairfax, VA, for appellees Butcher and Maass. **ON BRIEF:** Walter B. Martin, Jr., VandeVenter, Black, Meredith & Martin, Norfolk, VA, for appellees Spirit of Mount Vernon and Spirit Cruises.

Before LUTTIG, Circuit Judge, CHAPMAN, Senior Circuit Judge, and WILSON, United States District Judge for the Western District of Virginia, sitting by designation.

Reversed, vacated and remanded by published opinion. Senior Judge Chapman wrote the opinion, in which Judge LUTTIG and District Judge WILSON joined.

## OPINION

CHAPMAN, Senior Circuit Judge:

Karen Schultz was injured when the small boat in which she was riding crossed the wake[1] created by *The Spirit of Mount Vernon*, a large passenger vessel, which caused the smaller boat to impact sharply upon the water. Schultz brought this action against the owner and the operator of the smaller boat, and against *The Spirit of Mount Vernon* and its owner Spirit Cruises, Inc. ("Spirit Cruises"). During discovery, Spirit Cruises served a request for production of documents pertaining to the incident, but Schultz's attorney failed to produce a pertinent report of the accident that had been prepared by the Coast Guard Marine Safety Office. At the conclusion of a bench trial, the district court entered judgment for Schultz. We find that the failure to produce the Coast Guard report amounted to miscon-

duct under the Federal Rules of Civil Procedure, and reverse the district court's denial of Spirit Cruises' motion for a new trial, vacate the court's judgment and remand for a new trial.

### I.

On July 4, 1991, Karen Schultz was a passenger in a 16 foot pleasure boat, *Gypsy*, with a 65 horsepower outboard engine. She was injured when this craft crossed the wake of *The Spirit of Mount Vernon* and came down with great force, causing her to fall on the boat's hard inner surface. She suffered a fracture of her L–1 vertebra. This injury required extensive surgery, and her medical bills totaled $39,833.56.

*Gypsy* was owned by G. William Butcher, III and being operated by Edward H. Maass, neither of whom had any prior experience in the operation of small boats, particularly on the holiday crowded Potomac River. As *Gypsy* approached the three foot wake of *The Spirit of Mount Vernon*, Maass spotted the wake and reduced speed. After some discussion among Maass, Butcher and the passengers about the size of the wake and how to cross it, Maass increased the boat's speed to roughly ten knots and crossed the wake at a 45 degree angle. Prior to the accident, the five individuals who were on *Gypsy*, including Maass, consumed some alcoholic beverages.

Asserting admiralty jurisdiction, Schultz filed a complaint in federal district court against *The Spirit of Mount Vernon*, Spirit Cruises, Maass, and Butcher. The complaint alleged that Spirit Cruises was negligent for operating its vessel at an excessive speed and creating an unreasonable wake and that Maass and Butcher were negligent for operating the small craft at an excessive speed and handling the wake in an improper manner.

---

1. The term "wake" has been used in this opinion, because it was used throughout the trial and in the briefs to describe the change in the surface of the water caused by *The Spirit of Mount Vernon*. This is a misnomer. Nautically speaking, a wake is "[a] vessel's track; behind." *Knight's*

*Modern Seamanship*, 1941. The wave that caused the present controversy was a bow wave, which is "[t]he wave on either side of the bow of a ship under way." *Webster's Third New International Dictionary, Unabridged* 1976.

On or about July 21, 1992, the following interrogatory was served on Schultz by the attorney for Spirit Cruises:

18. Identify and describe in detail any plat, drawing, document, photo, moving picture, videotape, or report concerning the incident or damages alleged in the Motion for Judgment filed herein, by whom it was prepared or made, and the name and address of the person who presently has control or custody of the same.

Schultz responded to this interrogatory on August 21, 1992 as follows:

Answer: My attorney has a copy of the State of Maryland Watercraft Accident Report and has enclosed the same. We have enclosed a copy of Report of Negligent or Grossly Negligent Operation which was submitted by Edward Maass on the date of the accident.

At this time, Schultz was also in possession of a United States Coast Guard report, prepared by M.D. Kearney of the Coast Guard Marine Safety Office in Baltimore. This report concluded that there was "no evidence that SPIRIT OF MOUNT VERNON was operating at an excessive speed," and also stated, "[c]rossing a four foot wake in a 16 foot boat with five persons aboard at ten knots is very likely to cause injuries to the persons aboard. The appropriate action under these circumstances would have been to reduce speed to bare steerageway [the speed necessary only to maintain course] in meeting the wake." This report was not delivered to Spirit Cruises per its discovery request.

Trial was conducted on January 19, 1993. *The Illustrated Book of Basic Boating* was admitted into evidence. The book suggests that a small boat operator slow down and cross a wake at a slight angle. Maass testified that he and Butcher both read the book before their July 4th excursion. Corporal Leonard Sciukas of the Maryland Natural Resources Police, who had crossed *The Spir-*

*it of Mount Vernon*'s wake many times in his 18 foot Boston Whaler, stated that he crossed "at a 90 degree angle" and "six knots [bare steerageway]." Ottis B. Jones, an ex-Coast Guard Officer, testified that he would cross a 2½ to 3 foot wake at 90 to 65 degrees and at bare steerageway.

Spirit Cruises attempted to present evidence that defendants Maass and Butcher had been drinking prior to and during the time the group was on *Gypsy*. The court excluded the evidence under Rule 403 of the Federal Rules of Evidence as being more prejudicial than probative because Spirit Cruises could not demonstrate that Maass suffered impairment or memory loss due to the alcohol.

In its Findings of Fact and Conclusions of Law, the district court found that although there was no speed limit for this stretch of the Potomac River, *The Spirit of Mount Vernon* violated the Safe Speed Rule[2] by proceeding at full throttle when a number of other boats were in the vicinity, and that the ship's failure to reduce speed was negligence and this negligence was the proximate cause of Schultz's injury because its excessive speed created the three foot wake and the wake caused the smaller boat to "slam down" on the water.

The court then addressed the negligence of Maass and Butcher and concluded that Maass "did what he was supposed to do" by slowing the boat and turning to face the wake at an angle. The court found that Maass crossed the wake moving slowly, although not at "bare steerage," but that Maass acted reasonably in slowing his boat and by complying with the Safe Speed Rule and keeping a proper lookout. The court absolved Maass and Butcher of liability and found that the negligence of *The Spirit of Mount Vernon* was the sole proximate cause of the plaintiff's injuries.

---

2. 33 U.S.C.A. § 2006 (West 1986), the Safe Speed Rule, provides in pertinent part:

Every vessel shall at all times proceed at a safe speed so that she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions.

In determining a safe speed the following factors shall be among those taken into account:

(a) By all vessels:

   *    *    *    *    *    *

(ii) the traffic density including concentration of fishing vessels or any other vessels;....

On February 4, 1993, Spirit Cruises filed a Rule 60(b) motion for a new trial, to open judgment, to permit the taking of additional testimony, to amend the findings of fact and conclusions of law, and to enter a new judgment. In this motion, Spirit Cruises alleged that plaintiff withheld the Coast Guard Investigative Report although such reports had been properly requested during discovery. Spirit Cruises claimed that the plaintiff's failure to produce the report caused it material prejudice. The district court denied the motion, concluding that the Coast Guard Investigative Report was not newly discovered evidence because it could have been discovered by the exercise of due diligence and that the report would not have changed the court's finding as to the liability of Spirit Cruises.

## II.

■ Spirit Cruises made a proper discovery demand for reports pertaining to the incident. Although Schultz was in possession of a relevant United States Coast Guard report, the document was not produced. After the trial was over and Spirit Cruises became aware of the report, Spirit Cruises moved for a new trial pursuant to Rule 60(b) of the Federal Rules of Civil Procedure.[3] The district court denied the motion, finding that the report was not newly discovered evidence since Spirit Cruises could have discovered the document with the exercise of due diligence and "more important, it would not have changed the court's findings as to the liability of the defendants." Spirit Cruises contends that it was denied the opportunity to fully litigate its case by Schultz's failure to turn over the requested Coast Guard report and that Schultz's actions amounted to misconduct under Rule 60(b)(3). We now review the district court's denial of a Rule 60(b) motion for an abuse of discretion. *Transportation, Inc. v. Mayflower Servs., Inc.,* 769 F.2d 952, 954 (4th Cir.1985).

In *Square Constr. Co. v. Washington Metro. Area Transit Auth.,* 657 F.2d 68, 71 (4th Cir.1981), we set forth three factors that a moving party must establish to prevail on a Rule 60(b)(3) motion: (1) the moving party must have a meritorious defense; (2) the moving party must prove misconduct by clear and convincing evidence; and (3) the misconduct prevented the moving party from fully presenting its case. After proof of these elements, "the court must balance the competing policies favoring the finality of judgments and justice being done in view of all the facts, to determine within its discretion, whether relief is appropriate in each case." *Id.*

Applying the rule to the facts of this case, we find a new trial is necessary. First, Spirit Cruises presented a meritorious defense that the operator of the small craft, and not the operator of *The Spirit of Mount Vernon,* was responsible for Schultz's injuries. The trial court observed that the negligence of Maass was a close question. Second, although Schultz claims the report was not withheld intentionally, the document was in her attorney's possession at the time of the request, and the failure to produce such an important report which contained information helpful to an adversary's position is not easily excused. We hold that an adverse party's failure, either inadvertent or intentional, to produce such obviously pertinent requested discovery material in its possession is misconduct under the meaning of Rule 60(b)(3). *See Stridiron v. Stridiron,* 698 F.2d 204, 207 (3d Cir.1983) (failure to produce requested discovery material can constitute Rule 60(b)(3) misconduct); *Square Construction,* 657 F.2d at 71 (same). Third, the Coast Guard report would have helped Spirit Cruises bolster its defense because the report implicated Maass and exonerated *The Spirit of Mount Vernon.* In addition, M.D. Kearney, the author of the report, could have been called to testify by Spirit Cruises, and the information contained in the Coast Guard Report may well have led the defense attorneys to additional evidence that supported the report's findings and conclusions, which are favorable to Spirit Cruises. Finally, we

---

3. In relevant part, Rule 60(b) sets forth "On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order or proceeding for the following reasons: ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party...."

acknowledge the important consideration of finality of judgments, but the fairness and integrity of the fact finding process is of greater concern and a party's failure to produce a requested document so favorable to an adversary impedes that process and requires redress in the form of a new trial.

■ The district court denied the Rule 60(b) motion, finding the report was not newly discovered evidence and the report would not have altered the court's determination as to liability. It appears the court confused the standard set forth in Rule 60(b)(2) with the standard of 60(b)(3), which is applicable to the present case. Under 60(b)(2), relief from final judgment may be given if there is "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)...." In *Anderson v. Cryovac, Inc.,* the First Circuit explained the difference between sections (b)(2) and (b)(3) of Rule 60:

> [The Rule 60(b)(3) ] standard is more lenient than its Rule 60(b)(2) counterpart, and properly so. The "newly discovered evidence" provision of Rule 60(b)(2) is aimed at correcting an erroneous judgment stemming from the unobtainability of evidence. Consequently, a party seeking a new trial under Rule 60(b)(2) must show that the missing evidence was "of such a material and controlling nature as [would] probably [have] change[d] the outcome" ... In contrast, Rule 60(b)(3) focuses not on erroneous judgments as such, but on judgments which were unfairly procured. When wrongful secretion of discovery material makes it inequitable for the withholder to retain the benefit of the verdict, the aggrieved party should not be required to assemble a further showing.

862 F.2d 910, 924 n. 10 (1st Cir.1988). In *Square Construction,* we found the district court's denial of a Rule 60(b)(3) motion on the grounds that it would not alter the outcome to be error. 657 F.2d at 72. We hold again today that new evidence does not have to be result altering to warrant a new trial on a Rule 60(b)(3) motion. Since Spirit Cruises

has satisfied Rule 60(b)(3) and has met all the criteria set forth in *Square Construction,* we therefore reverse the court's denial of the Rule 60(b) motion and remand for a new trial.

### III.

■ Spirit Cruises claims the district court improperly excluded evidence of Maass's alcohol consumption the day of the accident. The court excluded the evidence and found that under Federal Rule of Evidence 403 it was more prejudicial than probative when Spirit Cruises could not make a proffer that the alcohol impaired Maass's operation of the boat or his memory. We review the district court's exclusion of the evidence for an abuse of discretion. *Garraghty v. Jordan,* 830 F.2d 1295, 1298 (4th Cir.1987).

■ Schultz brought this action under admiralty jurisdiction thus the Federal Rules of Evidence apply.[4] Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues...." A district court has broad discretion under Rule 403 to exclude prejudicial evidence, but a court typically exercises this authority during jury trials. *See, e.g., United States v. Simpson,* 910 F.2d 154 (4th Cir.1990); *Merrick v. Mercantile–Safe Deposit & Trust Co.,* 855 F.2d 1095 (4th Cir. 1988); *Ellis v. International Playtex, Inc.,* 745 F.2d 292 (4th Cir.1984). Prejudicial evidence is excluded to protect the jury from drawing improper inferences. *Mullen v. Princess Anne Volunteer Fire Co.,* 853 F.2d 1130, 1134 (4th Cir.1988) ("All relevant evidence is 'prejudicial' in the sense that it may prejudice the party against whom it is admitted. Rule 403, however, is concerned only with 'unfair' prejudice. That is, the possibility that the evidence will excite the jury to make a decision on the basis of a factor unrelated to the issues properly before it.").

In this case, we are faced with the exclusion of prejudicial evidence in a trial to the

---

4. We note this fact because the district court apparently applied the Virginia rule on proof of impairment to its Rule 403 analysis.

bench. In *Gulf States Utils. Co. v. Ecodyne Corp.,* 635 F.2d 517 (5th Cir. Unit A Jan. 1981), the Fifth Circuit found the district court's exclusion of prejudicial evidence to be in error since the matter was tried before the bench. In so doing, the Fifth Circuit stated,

[e]xcluding relevant evidence in a bench trial because it is cumulative or a waste of time is clearly a proper exercise of the judge's power, but excluding relevant evidence on the basis of "unfair" prejudice is a useless procedure. Rule 403 assumes a trial judge is able to discern and weigh the improper inferences, and then balance those improprieties against probative value and necessity. Certainly, in a bench trial, the same judge can also exclude those improper inferences from his mind in reaching a decision.

*Id.* at 519.

■ Adopting the position taken in *Gulf States,* we hold that in the context of a bench trial, evidence should not be excluded under 403 on the ground that it is unfairly prejudicial. Under the Federal Rules of Evidence, admissibility of evidence is favored unless the probative value of the evidence is so low as to warrant exclusion when prejudice is a factor. Jack B. Weinstein and Margaret A. Berger, *Weinstein's Evidence* § 403[03] (1993). Rule 403 was designed to keep evidence not germane to any issue outside the purview of the jury's consideration. For a bench trial, we are confident that the district court can hear relevant evidence, weigh its probative value and reject any improper inferences.

■ We must, however, still address the issue of whether the exclusion of evidence was in this instance harmless error. *See* Fed.R.Civ.P. 61. Evidence of Maass's consumption of alcohol is relevant to the inquiry of his perceptive abilities at the time of the accident and the determination of comparative fault. *See Padgett v. General Motors Corp.,* 544 F.2d 704, 705 (4th Cir.1976); *Jarrell v. Ford Motor Co.,* 327 F.2d 233, 235 (4th Cir.1964). Spirit Cruises' attorney was prevented from pursuing any inquiry into the amount of alcohol consumed by Maass during lunch or while on the boat. The exclusion of this evidence was not harmless error since a party was prevented from fully developing evidence relevant to a material issue. Because the court abused its discretion in excluding this relevant evidence, we reverse its ruling and order on remand that Spirit Cruises be allowed to pursue its line of inquiry into the consumption of alcoholic beverages.

IV.

We find it unnecessary to address the claims of the plaintiff and the defendant Spirit Cruises that the findings of fact on the issue of negligence were clearly erroneous because a new trial will require the district court to make new findings based upon the evidence that is presented at the new trial. For the foregoing reasons, the district court's denial of Spirit Cruises' Rule 60(b) motion is reversed, the verdict for Schultz is vacated and the case is remanded to the district court for a new trial with directions to allow a reasonable period for additional discovery so the parties may pursue issues that have come to light as a result of the information contained in the Coast Guard report. At the new trial Spirit Cruises will be able to inquire about the consumption of alcohol.

*REVERSED, VACATED AND REMANDED WITH INSTRUCTIONS.*