64 F.3d 659
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Betty G. SANDERS, as Committee, General Guardian and
Guardian Ad Litem for Henry Edward Sanders,
Plaintiff-Appellant,
v.
CIM INDUSTRIAL MACHINERY, INC., formerly known as C. Itoh
Company; Toyo Umpanki Company, Limited; McLeod
Equipment Company, Defendants-Appellees.
Betty G. SANDERS, as Committee, General Guardian and
Guardian Ad Litem for Henry Edward Sanders,
Plaintiff-Appellee,
v.
CIM INDUSTRIAL MACHINERY, INC., formerly known as C. Itoh
Company; Toyo Umpanki Company, Limited; McLeod
Equipment Company, Defendants-Appellants.
Betty G. SANDERS, as Committee, General Guardian and
Guardian Ad Litem for Henry Edward Sanders,
Plaintiff-Appellee,
v.
CIM INDUSTRIAL MACHINERY, INC., formerly known as C. Itoh
Company; Toyo Umpanki Company, Limited; McLeod
Equipment Company, Defendants-Appellants,
Nelson, Mullins, Riley and Scarborough, Appellant.
 Nos. 94-1297, 94-1378, 94-1380.
 United States Court of Appeals, Fourth Circuit.
 Argued March 8, 1995.
Decided Aug. 23, 1995.
 
 ARGUED: Charles Elford Carpenter, Jr., RICHARDSON, PLOWDEN, GRIER & HOWSER, P.A., Columbia, SC; Mitchell Myron Willoughby, WILLOUGHBY, HOEFER & SIMMONS, P.A., Columbia, SC, for Appellant. Stephen G. Morrison, NELSON, MULLINS, RILEY & SCARBOROUGH, L.L.P., Columbia, SC, for Appellees. ON BRIEF: F. Barron Grier, III, Deborah Harrison Sheffield, RICHARDSON, PLOWDEN, GRIER & HOWSER, P.A., Columbia, SC; Gary C. Pennington, WILLOUGHBY, HOEFER & SIMMONS, P.A., Columbia, SC, for Appellant. Rebecca Laffitte, C. Mitchell Brown, William C. Wood, Jr., NELSON, MULLINS, RILEY & SCARBOROUGH, L.L.P., Columbia, SC, for Appellees.
 Before ERVIN, Chief Judge, NIEMEYER, Circuit Judge, and SPROUSE,* Senior Circuit Judge.
 OPINION
 ERVIN, Chief Judge:
 
 
 1
 These appeals result from an unsuccessful products liability action brought by Betty G. Sanders on behalf of her son, Henry Edward Sanders, who was seriously injured after falling from a forklift manufactured, distributed, and sold by defendants Toyo Umpanki Company, CIM Industrial Machinery, Inc. ("CIM"), and McLeod Equipment Company, respectively. Betty Sanders challenges the district court's refusal to grant her a new trial as a sanction for defendants' alleged discovery abuse, the trial court's instructing the jury on the assumption of risk defense, and the defendants' use of their peremptory challenges in what she contends was a racially discriminatory manner. Defendants cross-appeal from the district court's findings that they deliberately had withheld evidence and engaged in reprehensible conduct over the course of discovery. The law firm of Nelson, Mullins, Riley and Scarborough ("Nelson, Mullins"), which represents the defendants, also appeals the district court's determination that the firm had engaged in a pattern of discovery abuse and had exhibited a conscious disregard for the truth. Because none of Sanders' arguments merits a new trial, we affirm the district court's judgment entering the jury's verdict in favor of the defendants. We hold, however, that the district court erred in finding that the defendants and Nelson, Mullins engaged in substantial discovery abuse and prohibit citation to the lower court's findings of intentional misconduct.
 
 I.
 
 2
 Ed Sanders was employed by Lowe's of Westgate in Spartanburg, South Carolina. His job responsibilities included loading and unloading merchandise in the store's warehouse. On March 3, 1990, Sanders fell approximately eleven feet from a forklift onto the concrete floor below. He sustained severe, permanent injuries. At the time of the accident, Sanders was attempting to retrieve a dryer from the third tier of vertical shelving in the Lowe's warehouse.
 
 
 3
 The forklift from which Ed fell was manufactured in Japan by Toyo Umpanki and shipped to CIM in Texas. There, pursuant to the customer's request, a "sideshifter" manufactured by Cascade, which is not a party to this lawsuit, was attached to the forklift's carriage. The sideshifter had metal "stops" welded at its ends to prevent the forks from disengaging laterally. After installing the device, CIM reattached the original Toyo Umpanki "load backrest extension," another device meant to prevent the forks from moving laterally, by bolting it to the sideshifter.
 
 
 4
 On September 3, 1992, Betty Sanders filed this action in the United States District Court for the District of South Carolina on her son's behalf. The complaint was based on both a theory of strict liability and breach of the implied warranty of merchantability and fitness for an intended purpose. On February 8, 1993, she amended the complaint to include the forklift's manufacturer, Toyo Umpanki, and its seller, McLeod Equipment, as defendants. On September 10, 1993, sixteen days after the deadline for discovery had expired and ten days prior to trial, defendants informed Sanders' counsel about the existence of the safety stops welded on the sideshifter. Defendants asserted that they did not know about the existence of these stops--discovered in preparation for trial--until the day before they notified Sanders.
 
 
 5
 During a five-day trial, the parties disputed the cause of the accident. Betty Sanders claimed that the lift's right fork slid off the end of the carriage, causing her son to fall backwards. She argued that the forklift was defectively designed, that the load backrest extension was an inadequate stop, and that the defendants failed to provide adequate warning that the forks could fall from the end of the sideshifter once the load backrest extension was removed from the forklift. Defendants offered evidence that Ed Sanders rode on the bare forks of the lift, despite a pictogram on the machine warning against such activity. Additionally, moments before the accident, he declined a co-worker's offer to elevate him on a protective pallet, rather than the bare forks. Defendants also showed that the forklift's load backrest extension had been torn from its mounting bolts and remained unrepaired at the time of Sanders' fall.
 
 
 6
 Betty Sanders filed a motion in limine asking the court to exclude all evidence regarding the stops on the Cascade sideshifter. After a disjointed and somewhat contentious conversation with counsel from the bench, the district court initially indicated that it would grant Sanders' request. Defense counsel then pointed out that a witness would commit perjury if he testified that the stops did not exist. The court ruled that it would permit cross-examination on the subject, but admonished: "you're not going to offer another alternate theory." During subsequent testimony, Sanders' counsel, Mitchell Willoughby, asked his expert witness Douglas Bradbury about the existence of stops on the sideshifter. Later, Willoughby questioned other of his own witnesses about the stops, in addition to cross-examining defense witnesses about the stop's effectiveness.
 
 
 7
 On September 24, 1993, a jury returned a verdict in favor of defendants following a five-day trial. Sanders filed a motion for a new trial, arguing that the district court had committed reversible error by failing to exclude all references to the stops, because the defendants had not revealed their existence in a timely manner. The district court denied Sanders' motion in an order issued on February 1, 1994. Concluding that it should have excluded any evidence concerning the Cascade stops, the district court held that a new trial was unwarranted nevertheless, because "the exclusion of this evidence would not have changed the jury's verdict" and Sanders had not been unduly prejudiced. The court opined, however, that the defendants and their attorneys "exhibited a conscious disregard of the fairness and candor to which the Plaintiff and this Court are entitled" and that their "reprehensible" conduct "undermine[d] the basic foundation of our justice system." Citing the behavior of defendants' counsel in other cases, the court viewed their conduct as "representative of a pattern approach to discovery abuse employed habitually by the products liability team of ... Nelson, Mullins."
 
 
 8
 Sanders filed a timely notice of appeal to this court. Defendants cross-appealed from the district court's judgment, as did their counsel, seeking expungement of the judicial findings of misconduct on their part. Jurisdiction over this diversity action is proper under the authority of 28 U.S.C. Secs. 1332 and 1291.
 
 II.
 
 9
 We first address the issues concerning the alleged discovery abuse by defendants and Nelson, Mullins.
 
 A.
 
 10
 Betty Sanders contends that the district court erred by denying her motion for a new trial based on the admission of evidence regarding safety stops on the Cascade sideshifter, the existence of which was not revealed to Sanders until after the deadline for discovery had passed.[1] We review the lower court's denial of a motion for a new trial based on alleged discovery violations for abuse of discretion. Taylor v. Home Ins. Co., 777 F.2d 849, 855 (4th Cir.1985), cert. denied, 476 U.S. 1142 (1986).
 
 
 11
 Sanders presented no evidence to contradict defendants' version of why the stops were revealed belatedly. If we accept their account, defendants and their attorneys did not violate their duty under Federal Rule of Civil Procedure 26(e) to supplement their responses to Sanders' discovery request for information about any of the forklift's safety mechanisms.[2] Defendants concede that Mitsuyoshi Manabe, a design engineer for Toyo Umpanki, considered the possibility that the Cascade sideshifter included a stop after he saw a blurry photograph of the machine two days prior to his deposition. At his July 6, 1993, deposition, though, Manabe indicated that no such device existed. Explaining this discrepancy, he maintained that he had decided prior to his deposition that there was a spot, rather than a stop, on the picture he had seen. According to Manabe, he discovered a 1982 drawing of a similar sideshifter that had stops for the first time on August 20, during preparations for trial. After the drawing was sent from Japan to the United States and through company channels, this information reached Nelson, Mullins on September 3 and Sanders' counsel on September 10. Nelson, Mullins attributes this one-week delay to the Labor Day holiday and to its inability to inspect the forklift until September 9. Sanders contends that, at the least, defendants were negligent in not discovering the relevant information earlier. Defendants counter by emphasizing that several of Sanders' experts also inspected the forklift, and they too failed to recognize the stops as such.
 
 
 12
 In denying Sanders' motion for a new trial, the district court correctly recognized that "an error in the admission of evidence ... is not grounds for granting a new trial unless the failure to do so would be inconsistent with substantial justice." See Fed.R.Civ.P. 61.
 
 
 13
 Courts examining compliance with Rule 26(e) have articulated four significant factors: (1) the failure to supplement an answer, (2) the importance of the information, (3) the need for additional time, and (4) the possibility of a continuance. See, e.g., Outley v. New York, 837 F.2d 587, 590 (2d Cir.1988); Murphy v. Magnolia Elec. Power Ass'n, 639 F.2d 232, 235 (5th Cir.1981). Here, defendants offer a plausible explanation for their initial failure to produce the document. Assuming that they did not ascertain the existence of the stops until September 9, the information was presented to Sanders' counsel the day after its discovery. While Sanders argues that the defendants had additional access to information related to the forklift's design, the sideshifter, which was added to the forklift after production, had been manufactured by Cascade, not by the defendants. With respect to the second factor, although the information was important, it was only one of several grounds by which the defendants could prevail at trial. Moreover, the fact that the highly relevant material concerned an indisputable physical reality counseled for its admission. Conducting a trial as though the stops did not exist would have belied the truth and transfused the proceedings with a hypothetical quality. Finally, the fact that the defendants offered to support a motion for a continuance based on the new information bolsters their claim that Sanders was not prejudiced by the delayed discovery.
 
 
 14
 Sanders' reliance on Schultz v. Butcher, 24 F.3d 626 (4th Cir.1994), for the proposition that the district court erred by requiring that the evidence alter the jury's verdict is misplaced. First, Schultz dealt with a motion for post-judgment relief pursuant to Federal Rule of Civil Procedure 60(b)(3), which deals with "fraud ..., misrepresentation, or other misconduct of an adverse party," not with a motion for a new trial under Rule 59. See id. at 631. Second, unlike Schultz, Sanders did not "prove misconduct by clear and convincing evidence." Id. at 630. Possibly the most important distinction between Schultz and the present case is that the information withheld in that case was not discovered until after trial. Here, Sanders at least had the information ten days prior to trial. Furthermore, she had the opportunity to make an unopposed motion for a continuance, one that she rejected. Based on the foregoing, we hold that the district court did not abuse its discretion in denying plaintiff's motion for a new trial.
 
 B.
 
 15
 Regarding the district court's factual findings concerning a pattern of intentional discovery abuse and reprehensible conduct by the defendants and their attorneys, we hold that the findings are clearly erroneous and order that citation to that portion of the district court's opinion be prohibited. See In re General Motors Corp., No. 94-1011 (4th Cir. March 23, 1994) (prohibiting citation to improper findings of discovery abuse); cf. Hathcock v. Navistar, 53 F.3d 36, 42 (4th Cir.1995) (holding district court's finding of "wilful deception" to be clearly erroneous). Although the manner in which the defendants and their attorneys conducted discovery is not commendable, there is insufficient evidence of intentional misconduct to warrant the district court's rather severe remarks. Moreover, in Wilson v. Volkswagen of Am., 561 F.2d 494, 510-11 (4th Cir.1977), cert. denied, 434 U.S. 1020 (1978), this court discouraged trial judges from relying on an individual's conduct in other cases, as the district court did here, particularly where the other proceedings are not made a part of the record and the accused party is not given a chance to respond. The trial judge's extensive reliance on his earlier findings in the Hathcock case is especially unjustified. In Hathcock, we reversed the default sanction the court had imposed for alleged discovery violations as an abuse of discretion, 53 F.3d at 41, ordered that the matter be assigned to a different judge on remand because a reasonable person might question the judge's impartiality, id., and reversed a finding that the defendant's attorney had engaged in "wilful deception." In the instant case, the court's undue haste to sanction the defendants and their counsel is evidenced by its failure to recognize that the attorney sanctioned in Hathcock was not affiliated with the Nelson, Mullins firm. Accordingly, we reverse the district court's findings that the defendants and their attorneys "exhibited a conscious disregard" for the truth and engaged in "reprehensible" conduct over the course of discovery.
 
 III.
 
 16
 Sanders also contends that she is entitled to a new trial because the district court erroneously charged the jury on the assumption of risk defense. We review jury instructions using a practical test, determining "whether the instructions construed as a whole, and in light of the whole record, adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party." Spell v. McDaniel, 824 F.2d 1380, 1395 (4th Cir.1987), cert. denied, 484 U.S. 1027 (1988). Under South Carolina law, which applies in this case, see Erie R.R. v. Tompkins, 304 U.S. 64 (1938); Harrison v. Edison Bros. Apparel Stores, 924 F.2d 530 (4th Cir.1991), the assumption of the risk defense is appropriately charged to a jury where there is evidence showing that: "(1) the plaintiff has knowledge of the facts constituting a dangerous condition, (2) he knows the condition is dangerous, (3) he appreciates the nature and extent of the danger, and (4) he voluntarily exposes himself to the danger." Senn v. Sun Printing Co., 367 S.E.2d 456, 458 (S.C.Ct.App.1988). South Carolina courts have recognized that knowledge may be imputed if "the danger was ... obvious or apparent." Griffin v. Griffin, 318 S.E.2d 24, 29 (S.C.Ct.App.1984).
 
 
 17
 There was ample evidence in this case to create a jury question as to whether Sanders' son voluntarily assumed a known risk. Two Lowe's employees testified that they barely had avoided forklift accidents; the workers also indicated that they had known that the manner in which Ed Sanders was riding the forklift posed a danger. Furthermore, a pictogram on the machine warned against riding the bare forks, and Sanders rejected the use of a pallet that would have decreased the danger to himself. In addition, Ed Sanders was a high school graduate with no mental disabilities that might have impaired his ability to appreciate the risk. In sum, there was sufficient evidence for the district court to charge the jury on the assumption of risk defense.
 
 IV.
 
 18
 Finally, Betty Sanders claims that the defendants violated Batson v. Kentucky, 476 U.S. 79 (1986), and its progeny by using all four of their peremptory challenges to strike the only four African Americans in the sixteen-person jury venire. In order to challenge a peremptory strike successfully, the opponent of the strike "must show that these facts and any other relevant circumstances raise an inference that the [proponent] used the practice to exclude the veniremen from the petit jury on account of their race." Batson, 476 U.S. at 96. As explained by the Supreme Court in Purkett v. Elem, --- U.S. ----, 115 S.Ct. 1769, 1770-71 (1995) (per curiam):
 
 
 19
 Under our Batson jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step 1), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If a race-neutral explanation is tendered, the trial court must then decide (step 3) whether the opponent of the strike has proved purposeful racial discrimination.
 
 
 20
 Where a district court has held a hearing on a Batson challenge, we review the explanations offered by the proponent of the strike directly. United States v. Campbell, 980 F.2d 245, 249 (4th Cir.1992), cert. denied, --- U.S. # 6D6D 6D# , 113 S.Ct. 2446 (1993). The lower court's findings as to a party's reasons for striking certain jurors are reversible only if clearly erroneous. United States v. Bynum, 3 F.3d 769 (4th Cir.1993), cert. denied, # 6D6D 6D# U.S. ----, 114 S.Ct. 1105 (1994).
 
 
 21
 At the hearing conducted in this case, the defendants indicated that the first African-American venireperson was struck because she previously had filed two worker's compensation claims and a discrimination claim with a government agency. The second individual was a forklift operator and had been involved in other lawsuits involving serious personal injuries. The defendants claim to have struck the third potential juror based on information that she was a single mother who held a low-paying job. In response to a question from the court, defense counsel indicated that there were no comparable white individuals in the venire. Finally, the fourth black venireperson supposedly was dismissed because he recently had suffered a serious injury and failed to respond when asked a question by the court that should have elicited an affirmative response. Sanders withdrew her objection to the dismissal of this juror during the Batson hearing. Overall, Sanders offered no rebuttal evidence that any of the justifications submitted by the defendants were pretextual. See United States v. Joe, 928 F.2d 99, 103 (4th Cir.) (requiring party opposing strike to establish pretext if proponent of strike has established race-neutral explanation), cert. denied, 502 U.S. 816 (1991). The district court did not clearly err by finding that the potential jurors were struck for racially neutral reasons related to the case. We, therefore, reject Sanders' equal protection claim.
 
 V.
 
 22
 While we affirm the district court's order denying Betty Sanders' motion for a new trial, we reverse the lower court's findings of intentional discovery abuse by both the defendants and the Nelson, Mullins firm and prohibit citation to that portion of the court's order.
 
 No. 94-1297--AFFIRMED
 No. 94-1378--REVERSED
 No. 94-1380--REVERSED
 
 
 *
 Senior Judge Sprouse heard and participated in the oral argument in this case, but retired before the decision was rendered. The decision was made by a quorum of the panel pursuant to 28 U.S.C. Sec. 46(d)
 
 
 [1]
 Defendants contend that Sanders waived this issue by failing to object at trial. Although she filed a motion in limine to suppress the evidence, courts have held that such motions are insufficient and that the objecting party must make contemporaneous objections even after the court has ruled on the motion in limine. See, e.g., Clausen v. Sea-3, Inc., 21 F.3d 1181, 1190 (1st Cir.1994). Because Sanders' claim fails on the merits, we do not address whether she waived this claim by failing to object at trial
 
 
 [2]
 Rule 26(e)(2) states:
 A party is under a duty seasonably to amend a prior response if the party obtains information upon the basis of which (a) the party knows that the response was incorrect when made, or (b) the party knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.