WIDENER, Circuit Judge,
dissenting.
I respectfully dissent. While the reasons given by the majority usually justify an affirmance, in this case I think that a new trial is required for the reasons which follow.
I.
There can be no doubt that the excluded evidence is the key to this case. Indeed, the district court commented that the “only real differences, and everybody agrees, is whether or not the repairs were feasible to the fire damaged property.” The Land Commissioners noted this issue’s importance as well. The Land Commissioners’ report also expressly relied on Catalina’s failure to submit reconstruction expert testimony in recommending an award in Amtrak’s favor.
Nevertheless, Catalina failed to introduce any competent evidence on which *384 evidence of repair costs could be made. They failed to provide expert opinion that any steel or masonry could be used or, if some could be used, exactly how much and at what cost.
J.A. 1771.
The reason that the evidence was so crucial is simple: the area to be restored, the cost of which was disputed, constituted about one-half of the total square footage of the property. As the Land Commissioners observed, the parties’ determinations of value per square foot were almost identical: $20 by Amtrak, and $22.50 by Catalina. Thus, the condemnation award would effectively have doubled had Catalina’s reconstruction-cost evidence been considered and credited. On the other hand, exclusion possibly halved the award.
II.
The district court erred by excluding evidence that should have been provisionally admitted, making it impossible for this court to assess whether the exclusion was harmless.
A.
In this non-jury setting, the district court should have admitted relevant evidence of repair costs and disregarded any evidence that it found inadmissible or unpersuasive when rendering its decision.
In Multi-Medical Convalescent & Nursing Center of Towson v. N.L.R.B., 550 F.2d 974 (4th Cir.1977), we expressed grave concern about an administrative law judge’s “curtailing] development of potentially relevant lines of inquiry.” Id. at 976. We recommended liberalized admission in non-jury trials:
Professor Wright tells us that “the attitude now governing has been strongly stated by Judge Sanborn: Tn the trial of a nonjury case, it is virtually impossible for a trial judge to commit reversible error by receiving incompetent evidence, whether objected to or not’.” The appellate courts have taken a similarly critical view of exclusionary rulings by administrative agencies. Thus, we strongly advise administrative law judges: if in doubt, let it in.
Id. at 978 (citations omitted).
This principle extends to all sorts of non-jury trials. See Eagle-Picher Indus., Inc. v. Liberty Mut. Ins. Co., 682 F.2d 12, 18 (1st Cir.1982) (“a district court, sitting without a jury, might be well advised to admit provisionally all extrinsic evidence of the parties’ intent, unless it is clearly inadmissible, privileged, or too time consuming, in order to guard against reversal”) (emphasis added); Gulf States Utils. Co. v. Ecodyne Corp., 635 F.2d 517, 519 (5th Cir.1981) (calling exclusion of “prejudicial” evidence in a bench trial a “useless procedure”). We expressly adopted Gulf States in Schultz v. Butcher, 24 F.3d 626 (4th Cir.1994), finding that the district court’s error in excluding evidence was not harmless because “a party was prevented from fully developing evidence relevant to a material issue.” Id. at 632
The broader admissibility of evidence in bench trials is premised on the helpfulness of the practice in appellate review. Indeed, McCormick recommends that courts “provisionally admit all arguably admissible evidence, even if objected to[,] with the announcement that all admissibility questions are reserved until all the evidence is in”; the treatise explains that this “helps ensure that appellate courts have in the record the evidence that was rejected as well as that which was received.” McCormick on Evidence § 60 (4th ed.1992) (footnote omitted).
Given the Land Commissioners’ reliance on the absence of reconstruction-cost testimony in support of Catalina, I believe that these principles apply to this case, where the excluded evidence spoke to not just a *385 material issue, but the material issue. Cf. Schultz, 24 F.3d at 632. The district court should have admitted the evidence into the record and later decided the questions of admissibility and weight to be given the evidence.
B.
The report in question with respect to an estimate of repair costs was due on March 6, 2003, 30 days from the date of the February 4, 2003 hearing. It was offered for filing late, a reason given by Catalina being that Baltimore, in that period, had a snow storm, which turned out to be a blizzard, which was all or part of the reason offered for the delay. While the district court rejected the reasons given by Catalina for the late offering of the repair estimate, it stated in two places that it did not rely on those reasons for its decision not to admit the testimony of the expert who had been employed by Catalina. It stated, on April 7, 2003, “Even assuming without deciding, as Catalina proffers, that the excuses offered for the delay are not because of Pension Trust, such excuses do not warrant a modification of the deadline.” J.A. 691. And, in deciding Catalina’s objections to the Land Commissioners’ finding, the district court stated:
Now, because the Defendants in this case failed to comply with that order, the sanctions appropriate were under Rule 37 of the Federal Rules of Civil Procedure. They were sanctioned for failing to obey a court order They were not sanctioned under Rule 37 for fading to make Rule 26(A)(2)(b) disclosures, which has a different standard and is a more stringent standard.
J.A.1928. Thus, the key evidence was held to be inadmissible and kept from the Land Commissioners because of the violation of a court order.
It is true the district court decided that Amtrak had been prejudiced by such failure, but it did not state how Amtrak was prejudiced. In particular, so far as this record shows, there was no delay on account of such failure, the letters from the expert with respect to the delay being dated February 27 and March 14, 2003. So far as we are advised, the case, at the time of the district court’s order of April 7, 2003, had not been set for trial, and the trial of the case before the Land Commissioners was some five months later, in September, 2003. So whatever prejudice Amtrak may have suffered, it was not in a delay of the trial. In any event, any prejudice to Amtrak on that account, other than allowing Catalina to reach the merits of the controversy, could only have been in annoyance and additional expenses, if any. As we have mentioned before, Amtrak was in possession of the property and had been using the same for more than a year, so there was no denial of use.
Accordingly, I would vacate the judgment of the district court and grant a new trial.