**Mark MILLER, et al., Plaintiff,**

v.

**CITY OF CINCINNATI,
et al., Defendants.**

**Case No. 1:08cv550.**

United States District Court,
S.D. Ohio,
Western Division.

Nov. 19, 2008.

[Page content redacted]

Named Expert: Mark Weaver

Christopher Paul Finney, Finney, Stagnaro, Saba & Klusmeier, Co., LPA, for Plaintiffs.

Paula Boggs—Muething, Richard Ganulin, Assistant City Solicitor, Christopher Paul Finney, Finney, Stagnaro, Saba & Klusmeier, Co., LPA, Cincinnati, OH, Curt Carl Hartman, Amelia, OH, for Defendants.

## *OPINION & ORDER*

MICHAEL R. BARRETT, District Judge.

This matter is before the Court upon Plaintiffs' Motion Preliminary Injunction. (Doc. 2) Also before the Court is Defen-

dants' (1) Motion to Dismiss the First Amended Complaint (Doc. 19); (2) Motion to Dismiss the Second Amended Complaint (Doc. 24); Motion in *Limine* to Exclude Plaintiffs' Expert (Doc. 25); and Motion to Strike the Affidavit of Plaintiffs' Proposed Expert (Doc. 37). The Court held a hearing on this matter on October 22, 2008. (Doc. 36)

## I. *BACKGROUND*

Plaintiffs are an individual and two organizations who oppose the authority of the City Council to implement an automated photo-monitoring program to enforce violations of traffic laws and support the use of a system of proportional representation to elect City Counsel. (Doc. 22, ¶¶ 3–7) Plaintiffs also intend to engage in advocacy in the future regarding taxing and spending issues before the City of Cincinnati. (*Id.* ¶ 6) Plaintiffs bring this action in their own right and on behalf of a proposed class.[1] (*Id.* ¶ 77)

On April 28, 2008, Plaintiffs submitted a letter to Defendant Milton Dohoney, the City Manager of the City of Cincinnati. (*Id.* ¶¶ 9, 23 & Ex. C) Plaintiffs requested the use of the lobby and stairs inside City Hall for a press conference and rally. (*Id.*) This location was previously used for a rally on February 27, 2008 by the supporters of a tax levy for the Cincinnati Public Schools. (*Id.* ¶ 17) Participants and speakers included representatives from Parents for Public Schools of Greater Cincinnati, Cincinnatians Active to Support Education, the AMOS Project, and the Baptist Ministers Conference of Cincinnati and Vicinity. (*Id.* ¶ 18, 20–21 & Exs. A, B) These organizations are independent from the City of Cincinnati. (Doc. 28, ¶ 8)[2]

In a letter dated April 29, 2008, Defendant Joel Koopman, employed in the City's Division of Facility Management, responded to Plaintiffs' request. (Doc. 22, Ex. D) Koopman stated that Administrative Regulation # 5 governs the use of all City buildings, offices and City workplaces. (*Id.*) The Regulation in effect at that time provided, in relevant part:

> No private business enterprises or solicitations should be permitted in City buildings or operated therefrom. Exceptions should be made only by specific approval of the Department Head when it is judged to be in the public interest, as in the case, for example, of the United Way Campaign.
>
> . . .
>
> In making any exceptions to the above policies, Department Heads are urged to consider not only what is proper, but also how it appears to the public.

(*Id.*) Koopman explained that the intent of Administrative Regulation # 5 is that "the use of any City facility is for conducting business related to the functions of our various departments in serving the citizens and by City Council in the performance of their duties." (*Id.*) Koopman also explained that: "City Facility Management's practice is that events held inside the

1. Plaintiffs seek to certify the following class: Class No. 1: All individuals or organizations that wish, now or in the future, to conduct a press conference, rally or to engage in any other Communicative Activity in a Public Space inside of Cincinnati City Hall on any issue of public importance that affects the City of Cincinnati and to do so without having to obtain the sponsorship and blessing of a City-connected official or being subjected to any administrative regulation that places unfettered discretion in a City-connected official to grant permission for such press conference or rally.

2. In addition, it was discussed at hearing on the preliminary injunction that the Cincinnati Public Schools are governed by the Cincinnati Public Schools Board, not City Council or the City Manager.

building require a City sponsor, either a Council Member or a department as part of their regular business and duties." (*Id.*) Koopman closed by stating: "Should you contact one of the City departments or one of the Council Members and find agreement to sponsor this press conference and rally inside City Hall, we will gladly work with them to make this happen." (*Id.*) Instead of conducting the press conference and rally inside, Plaintiffs held their event outside City Hall ("the May 2008 Rally"). (*Id.* ¶ 25; Doc. 22, Ex. Z)

On June 9, 2008, an independent organization, Citizens for Community Values ("CCV"), held a press conference in a large conference room inside City Hall. (*Id.* ¶ 27 & Ex. E) At the conference, the coalition called upon a local weekly newspaper to stop publishing advertisements for adult businesses. (*Id.* ¶ 28) Speakers included a former City Councilmember who is a member of CCV, a former Justice Department official, and the director of another independent organization, Stepping Out 24/7 Ministries. (*Id.* ¶ 29)

On July 17, 2008, Plaintiffs submitted a second request to the City seeking use of the lobby and stairs inside City Hall for a second rally and press conference. (*Id.* ¶ 33 & Ex. F) Plaintiffs' request explains that the purposes of the rally and press conference would be to announce the results of the red light camera petition effort. (*Id.*, Ex. F) Koopman again responded by explaining that "[e]vents that do not have sponsorship from a City Department, the City Manager, a Council Member or the Mayor are welcome to use the exterior stairs since it is a public plaza.... If you should acquire sponsorship from one of the above parties, please inform us so arrangements can be made for use of the interior steps" (*Id.* ¶ 40 & Ex. G)

On August 6, 2008, the City Council defeated an ordinance submitted by the City Manager's Office that selected a vendor for the red light camera proposal. (Doc. 28, ¶ 62)

On August 19, 2008, 2008 WL 3890032, this Court entered a Temporary Restraining Order which enjoined Defendants from applying Administrative Regulation # 5 to requests for use of the lobby and stairs inside City Hall. (Doc. 8) The Court ordered further that no sponsored or unsponsored activities shall take place in the lobby and stairs inside City Hall except for routine ingress and egress during the pendency of the Temporary Restraining Order. (*Id.*) The Court found that Plaintiffs were entitled to relief because they had shown a likelihood of success on the merits of their Due Process claim. The Court found that Plaintiffs had not shown a likelihood of success on the merits of their First Amendment or Equal Protection claim.

Plaintiffs held their second rally on the stairs outside City Hall ("the August 20, 2008 rally"). (Doc. 22, Ex. Z)

Subsequent to the granting of the TRO, on September 9, 2008, the City revised Administrative Regulation # 5. The current Administrative Regulation # 5 provides:

> *Interior of City Hall*
>
> City Hall is lawfully dedicated for the purpose of allowing City officials to exercise the rights and responsibilities specified in the Charter of the City of Cincinnati....
>
> The interior spaces of City Hall are reserved for use by the Mayor, City manager and is assistants, City Councilmembers, City Department Directors, City Commissioners and Boards, and City employees. The interior of City Hall is open to the public for purposes of visiting City offices and attending City Council and other public meetings, The interior of City Hall is not generally available to the public for other purposes.

> When the Mayor, City Manager and his assistants, City Councilmembers, City Department Directors, and City Commissions and Boards intend to use interior spaces of City Hall for assemblages, they should notify the Facilities Management Division of the Public Services Department. That notice should be provided as far in advance of the intended use as reasonably practicable.
>
> Facilities Management is responsible for insuring that the assemblage does not create security problems, unreasonably interfere with ingress or egress from City Hall, or otherwise unreasonably interfere with the other official uses occurring inside City Hall.

(Doc. 22, Ex. H)

City Hall Chambers and a community room on the third floor of City Hall are subject to the Rules of Council, not Administrative Regulation # 5. (Doc. 28, ¶ 2 & Ex. D) The Rules of Council provide:

> The council chamber and community room shall be under the supervision and control of the clerk of council when the council is not in session. Except as herein provided they shall be used solely by the council and its committees for the transaction of public business of the city. If not required for such use, the clerk may permit their use for the transaction of other public business. Application for such use must be made to the clerk of council. Any permission granted may be canceled or revoked by the clerk forthwith where necessary for the protection of city property, the preservation of order, the transaction of public business of the city, or other sufficient reason.

(*Id.*)

On September 22, 2008, Plaintiffs filed a Second Amended Complaint. Plaintiffs sought to hold a political rally in support of two ballot issues in this November's election: (1) a proposal to restrict the ability and authority of the Council of the City of Cincinnati to implement an automated photo-monitoring program to enforce claimed violations of City traffic laws; and (2) the use of a system of proportional representation to elect the Cincinnati City Council. (Doc. 22) Plaintiffs sought to use the areas inside Cincinnati City Hall, including the inner front lobby and first floor staircase on the Plum Street side of City Hall, various conference rooms, the basement lunchroom in City Hall, and the Council Chambers in City Hall. (*Id.*)

In preparation for the hearing on the preliminary injunction, the parties conducted discovery and entered into a number of stipulations of fact for purposes of the hearing. The parties have submitted calendars maintained by the City for the use of certain spaces in City Hall. (Doc. 28, ¶ 6)[3] While the calendars are not complete, the dates range from February 3, 1997 to the present. (*Id.*)

The calendars show that the lobby and first floor staircase have been used for (1) the school tax levy rally; (2) occasional annual rallies for charitable City-sponsored giving campaigns (specifically, the United Way, United Negro College Fund, Community Shares and Fine Arts Fund); (3) tables for United Way and Fine Arts Fund solicitations during the respective City charitable giving campaigns; (4) the display of the piece of art entitled "The Memorial of Our Lost Children," comprised of shoes, toys and other items that belonged to murdered children; (5) an annual Christmas tree display and other holiday decorations; (6) another rally and press conference between 2000 and 2004

3. The parties stipulated that these events took place as well.

involving the Cincinnati Public Schools tax levy. (*Id.* ¶ 7)

The calendars show that the basement lunchroom has been used for monthly meetings of the City's Department of Transportation and Engineering's Bike/Pedestrian Advisory Committee, and on May 9, 2006 American Bicyclists held a Bicycle Commuter Course presentation as part of the Bike/Pedestrian Advisory Committee meeting. (*Id.*)

The calendars show that conference room number 115 has been used for (1) a prize drawing for employee contributors to the Fine Arts Fund during the City's Fine Arts Fund campaign; (2) meetings of Keep Cincinnati Beautiful, a City contractor; (3) meeting of SEEPAC; (3) board meeting and luncheon of American Society for Public Administrators (4) press conference with Councilmember Todd Portune about bringing a professional women's soccer team to the area; (5) a meeting of the Soccer Committee, requested by Karen Ball of Councilmember Todd Portune's office; (6) a meeting of International Visitors Council, requested by City Manager's Office employee Gina Ruffin; (7) meetings for International City/County Management Association held by former City Manager during its annual convention in Cincinnati in 2000; (8) a fundraiser by a Water Works employee; (9) United Way meetings requested by Shirley Dunham of Councilmember Crowley's office and City's Public Information Officer Meg Olberding; (10) "A Taste of City Hall" fundraiser for United Negro College Fund Drive; (11) press conference requested by Department of Community Development employee Velda Boyd; (12) a Hamilton County Convention Facilities Authority meeting; (13) a meeting of EITC Partnership/ Make Work Pay, requested by Councilmember Pepper; (14) a meeting of EITC Partnership/Make Work Pay, requested by Councilmember

Pepper; (15) an Office of National Drug Policy press; (16) the City's Fine Arts Fund Campaign kickoff; (16) a Kids Voting seminar on local government, requested by Councilmember Monzel; (17) the Mayor's annual Youth in City Government program; (18) a speech by American Idol celebrity Randy Jackson about heart health, requested by Councilmember Berding; and (19) a speech by Ohio Department of Corrections Director Terry Collins about the campaign "Who killed our kids?," requested by Mayor Mallory. (*Id.*)

The calendars show that conference room number 169 has been used for (1) a meeting of Keep Cincinnati Beautiful; (2) a Hamilton County Convention Facilities Authority orientation meeting; and (3) an Earned Income Tax Credit meeting, requested by Carla Walker of the Mayor's office. (*Id.*)

The calendars show that the Council Chambers and Committee Room have been used for (1) a Cincinnati Teen Court mock trial program, requested by Councilmember Cole; (2) a Youth Recognition Ceremony, requested by Councilmember Thomas; a United Way campaign event; (3) a Green & Healthy Schools meeting; (4) Truman Scholarship interviews, as requested by Councilmember Cranley; (5) the Mayor's Concert Series; (6) an event for the City's United Way Campaign, requested by Councilmember Berding; (7) a meeting for SORTA, requested by Councilmember Bortz; (8) Government Day, hosted by the Greater Cincinnati Chamber of Commerce; (9) sessions for the Leadership Cincinnati program, arranged by the City Manager's Office. (*Id.*)

The parties stipulate that under both versions of Regulation # 5, in order for independent individuals and organizations to participate in a rally and press conference inside of City Hall, such individuals would need to politically or administrative-

ly collaborate with the Mayor, a member of the Cincinnati City Council, the City Manager and his assistants, a City Department Director, or a City Board or Commission. (*Id.* ¶ 18)[4] The parties stipulate further that because of the requirement for political or administrative collaboration with City officials, it was and remains possible that advocates of one position, *e.g.*, the "Yes" position, on a ballot issue, could participate in a rally or press conference inside City Hall, and advocates of the opposite viewpoint, *e.g.*, the "No" position on the same ballot issue, could not participate in a similar rally or press conference inside City Hall unless those advocating such opposite viewpoint could also politically or administratively collaborate with one of the aforementioned individuals. (*Id.*)[5] The parties stipulate that under either the previous or current version of Administrative Regulation # 5 the "sponsor" of an event is able to use his or her full and independent discretion in determining whether to sponsor such use. (Doc. 28, ¶ 17)[6] Finally, the parties stipulate that under either version of Administrative Regulation # 5, the sponsor of an event does not necessarily need to attend the event. (*Id.* ¶ 14)

Plaintiffs claim that the City's policy regarding the use of the interior of City Hall violates the First and Fourteenth Amendments to the United States Constitution in that it (i) constitutes an invalid prior restraint on speech, (ii) allows arbitrary and capricious suppression of protected speech, (iii) is vague; (iv) is overbroad; (v) permits municipal administrators to make standardless decisions based on their own excessive and unfettered discretion about which speech should be permitted and which should not, and (vi) allows content and viewpoint censorship of speech that can easily be used to prevent expression of a particular point of view, (vii) denies the equal protection rights of Plaintiffs and others and (viii) denies the due process rights of Plaintiffs. Plaintiffs have also brought a claim based upon a violation of their freedom of association.[7] Plaintiffs' claims are brought pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, 28 U.S.C. § 2201(a). Plaintiffs seek declaratory relief, a preliminary and permanent injunction, nominal damages, and attorney fees.

## II. *ANALYSIS*

### A. *Motion to Dismiss*

Defendants argue that this Court lacks jurisdiction because Plaintiffs' claims are not ripe and Plaintiffs lack standing. Federal Rule of Civil Procedure 12(h)(3) instructs this Court to dismiss an action "[w]henever it appears by suggestion of the parties or otherwise that the court

4. The parties stipulate that there is no difference in the procedure to be followed under the past and current version of Regulation # 5 for an independent person or organization to try to achieve political or administrative collaboration with a City official for purposes of conducting an assemblage inside City Hall. (*Id.* ¶ 22)

5. The parties stipulate that the sponsor of an event could allow the use of such areas for an event or assemblage in support of or in opposition to issues appearing on the ballot at a forthcoming election. (*Id.* ¶ 16)

6. The Court notes under the Rules of Council, the clerk of council grants or denies permission for use of Council Chambers when not in use by Council.

7. The parties' discussion of this claim has been limited. Plaintiffs argue in a footnote in their Supplemental Brief in support of the Motion for Preliminary injunction that their freedom of expressive association is at issue.

lacks jurisdiction of the subject matter." Defendants also argue pursuant to Federal Rule of Civil Procedure 12(b)(6) that Plaintiffs have failed to state a claim.

1. ***First Amended Complaint***

Defendants filed their Motion to Dismiss the First Amended Complaint (Doc. 19) before Plaintiffs filed their Second Amended Complaint. The general rule is that an amended pleading supersedes the original and remains in effect, unless again modified, from that point forward. *Hartman v. Register*, 2007 WL 915193, *5 (S.D.Ohio March 26, 2007) (unpublished), *citing* 6 Wright, Miller & Kane, Federal Practice & Procedure § 1476, at 556–57 (2nd ed. 1990 & Supp.2001). Once an amended pleading is filed, the original pleading no longer performs any function in the case. *Id.* Accordingly, Defendants' Motion to Dismiss the First Amended Complaint is DENIED as MOOT. The Court will, however, consider arguments contained within the Motion to Dismiss the First Amended Complaint to the extent that they are incorporated by reference in Defendants' Motion to Dismiss the Second Amended Complaint (Doc. 24).

2. ***Standing***

Standing is a jurisdictional matter and is a threshold question to be resolved by the court before a court may address any substantive issues. *Planned Parenthood Ass'n v. City of Cincinnati*, 822 F.2d 1390, 1394 (6th Cir.1987). To establish standing, a plaintiff must show: (1) that he or she suffered an injury in fact, which is both concrete and actual or imminent; (2) that the injury is caused by the defendant's conduct; and (3) that it is likely, as opposed to speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). In addition, "[p]rudential limitations dictate that 'the plaintiff must be a proper proponent, and the action a proper vehicle, to vindicate the rights asserted.'" *Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Michigan Gaming Control Bd.*, 172 F.3d 397, 403 (6th Cir.1999), *quoting Pestrak v. Ohio Elections Comm'n*, 926 F.2d 573, 576 (6th Cir.1991).

Defendants argue that Plaintiffs have not suffered an injury in fact because they have not sought a City sponsor for their press conference and rally, either under the previous or current version of Administrative Regulation # 5.

Plaintiffs shown an injury in fact based on Defendants' denial of their request to hold their press conference and rally inside the lobby and stairs of City Hall. In addition, the Supreme Court has "long held that when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 755–756, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988). The Supreme Court has explained that there are "two major First Amendment risks associated with unbridled licensing schemes: self-censorship by speakers in order to avoid being denied a license to speak; and the difficulty of effectively detecting, reviewing, and correcting content-based censorship 'as applied' without standards by which to measure the licensor's action." *Id.* at 759, 108 S.Ct. 2138. "Therefore, a facial challenge lies whenever a licensing law gives a government official or agency substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers." *Id.*

Here, the parties have stipulated that under Administrative Regulation # 5 the sponsor of an event is able to use his or her full and independent discretion in determining whether to sponsor such use. Plaintiffs allege that as a result, City officials have unbridled discretion in determining who is permitted to conduct events inside City Hall. Therefore, a facial challenge is appropriate, and Plaintiffs have standing to bring their claims against Defendants.

### 3. *Ripeness*

To determine whether a claim is ripe, this Court must consider (1) the likelihood that the injury alleged by the plaintiff will ever occur; (2) whether the factual record is sufficiently developed to allow for adjudication; and (3) the hardship to the parties from refusing consideration. *Norton v. Ashcroft,* 298 F.3d 547, 554 (6th Cir.2002). However, this ripeness analysis "is somewhat relaxed in the First Amendment context." *Lawrence v. Welch,* 531 F.3d 364, 374 (6th Cir.2008), *quoting Norton,* 298 F.3d at 554; *see also Currence v. City of Cincinnati,* 28 Fed.Appx. 438, 441–42 (6th Cir.2002) (unpublished) ("Ripeness analysis is relaxed for the First Amendment cases involving a facial challenge to a regulation because courts see a need to prevent the chilling of expressive activity."), *citing Bill Richardson v. Gonzales,* 64 F.3d 1495, 1500 (10th Cir.1995).

Plaintiffs have shown that it is likely that the alleged injury will occur because on two previous occasions Defendants have denied Plaintiff's request to use the interior of City Hall because Plaintiffs did not have a sponsor for their event.[8] Next, the factual record is sufficiently developed to allow for adjudication. There are very little, if any, disputed facts, and this case largely turns on issues of law. *See Currence,* 28 Fed.Appx. at 441–42. The central dispute is whether the Administrative Regulation # 5 violates the Constitution by requiring a sponsor for an event held inside City Hall. Finally, it is clear that if this Court refuses consideration, Plaintiffs will not know if they will be permitted to hold future events inside City Hall, thereby creating an undue hardship. Therefore, the Court concludes that Plaintiffs' claims are ripe for adjudication.

### 4. *Mootness*

Defendants have argued that Plaintiffs' claims are moot because Administrative Regulation # 5 has been amended. However, based on the stipulations of the parties, it appears that the current version of Administrative Regulation # 5 is no different from Defendants' interpretation and application of the previous Administrative Regulation # 5 in that independent individuals and groups must find a sponsor to hold an event inside City Hall. Moreover, because nominal damages are a symbolic remedy for past wrongs, a prayer for nominal damages precludes a finding of mootness, even when the defendant has altered or abandoned the allegedly unconstitutional policy forming the basis for the plaintiff's complaint. *Murray v. Bd. of Trs., Univ. of Louisville,* 659 F.2d 77, 79 (6th Cir.1981) (remanding First Amendment case to district court for adjudication of plaintiff's nominal-damage claim); *see also Blau v. Ft. Thomas Pub. Sch. Dist.,* 401 F.3d 381, 387 (6th Cir.2005) (explaining that "even if [the plaintiff's] matriculation from middle school to high school mooted the claim for injunctive and declar-

8. However, the Court finds that any challenge Plaintiffs bring based upon Defendants "selectively and discriminatorily" allowing access to specific interior spaces (See Doc. 33, at 6) is not ripe. Plaintiffs did not seek sponsorship of their event, therefore their challenge can only be based upon the constitutionality of the sponsorship requirement itself.

atory relief (a point we need not decide), the existence of a damages claim ensures that this dispute is a live one and one over which Article III gives us continuing authority"). Therefore, the Court concludes that Plaintiffs' claims are not moot.

5. ***Failure to state a claim***

In reviewing a motion to dismiss for failure to state a claim, this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. National Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir.2008), *quoting DirecTV, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir.2007). However, the factual allegations contained in a complaint must "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007).

Plaintiffs bring claims for violations of the First and Fourteenth Amendments. Plaintiffs claim that the City has created a limited or designated forum inside City Hall based on the types of events held there. Plaintiffs claim that even if the areas inside City Hall at issue are nonpublic fora, Administrative Regulation # 5 is unconstitutional because it is a prior restraint on speech, and is overbroad and vague. Specifically, Plaintiffs allege that the sponsorship requirement of Administrative Regulation # 5 violates their right to free speech. Plaintiffs further claim due process and equal protection violations based upon the free speech violations. The Court finds the allegations in Plaintiffs' Second Amended Complaint are sufficient to state a claim for violations under the First and Fourteenth Amendments. Based on the foregoing, the Court DENIES Defendants' Motion to Dismiss.

**B.** ***Motion in Limine and Motion to Strike***

Defendants argue that this Court should preclude Plaintiffs from introducing the testimony of their proposed expert, Mark Weaver. Because Weaver's testimony was not presented at the hearing on the preliminary injunction, the Court hereby DENIES AS MOOT Defendants' Motion in Limine.

However, Plaintiffs have presented Weaver's affidavit in support of their motion for preliminary injunction. Defendants seek an order striking that affidavit pursuant to Federal Rules of Evidence 403 and 702 because Weaver's testimony does not meet the *Daubert* requirements, embraces legal conclusions, does not assist the trier of fact, and the probative value of the testimony is substantially outweighed by the danger of unfair prejudice.

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

An expert witness is generally prohibited from testifying on issues of law. *Berry v. City of Detroit,* 25 F.3d 1342, 1353 (6th Cir.1994) ("Although an expert's opinion may embrace an ultimate issue to be decided by the trier of fact, Fed.R.Evid. 704(a), the issue embraced must be a factual one."). However, this prohibition is not applicable where the court is sitting as

both a trier of fact and law. *See Grand Traverse Band of Ottawa and Chippewa Indians v. U.S. Atty. for Western Dist. of Mich.,* 46 F.Supp.2d 689, 694 (W.D.Mich. 1999) (finding that expert's affidavit properly provides evidence of a factual nature that is not barred by Rules 702 or 704; and the court, sitting as both trier of fact and of law on a motion for preliminary injunction, is fully able to disregard the implication of any impermissible legal conclusion); *Knisley v. U.S.*, 817 F.Supp. 680, 690 (S.D.Ohio 1993) (finding that any possible concern over invasion of the judge-jury relationship is not present in cases tried to the bench). Accordingly, in deciding the motion for preliminary injunction, the Court finds it unnecessary to strike Weaver's affidavit under Federal Rule of Evidence 702.

Federal Rule of Evidence 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Like Federal Rule of Evidence 702, Rule 403 has no application where the court sits as both trier of fact and law. In the context of a bench trial, the application of the unfair prejudice portion of Rule 403 has been seen as an unnecessary and "useless procedure." *U.S. v. Hall,* 2000 WL 32010, *2 (6th Cir. Jan. 4, 2000) (unpublished), *citing* 22 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5213 (1978 & Supp 1999) ("Since the judge must hear the evidence in ruling on the motion to exclude the evidence under Rule 403, exclusion of the evidence on grounds of prejudice in a bench trial is described as a 'useless procedure.' "); *Schultz v. Butcher,* 24 F.3d 626, 632 (4th Cir.1994) (finding court should not exclude evidence under Rule 403 in bench trial on grounds of unfair prejudice); *Gulf States Utilities Co. v. Ecodyne Corp.,* 635 F.2d 517, 519 (5th Cir.1981) (finding unfair prejudice portion of Rule 403 "has no logical application to bench trials"). While the Court questions the relevance of the information in Weaver's affidavit, the Court finds that it need not be excluded under Federal Rule of Evidence 403. Accordingly, Defendants' Motion to Strike the Affidavit of Plaintiffs' Proposed Expert is DENIED.

### C. *Preliminary injunctive relief standard*

Under Federal Rule of Civil Procedure 65, injunctive relief is an extraordinary remedy whose purpose is to preserve the *status quo.* In when determining whether to grant or deny a preliminary injunction, this Court must consider four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *Chabad of S. Oh. & Congregation Lubavitch v. City of Cincinnati,* 363 F.3d 427, 432 (6th Cir.2004), *quoting Blue Cross & Blue Shield Mut. of Ohio v. Columbia/HCA Healthcare Corp.,* 110 F.3d 318, 322 (6th Cir.1997). In First Amendment cases, the first factor will often be determinative. *Deja Vu of Nashville, Inc. v. Metropolitan Government of Nashville and Davidson County, Tennessee,* 274 F.3d 377, 400 (6th Cir.2001), *citing Connection Distrib. Co. v. Reno,* 154 F.3d 281, 288 (6th Cir.1998).

### D. *Section 1983*

Section 1983 creates no substantive rights, but merely provides reme-

dies for deprivations of rights established elsewhere. *Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). Section 1983 has two basic requirements: (1) state action that (2) deprived an individual of federal statutory or constitutional rights. *Flint v. Kentucky Dept. of Corrections,* 270 F.3d 340, 351 (6th Cir.2001), *citing Bloch v. Ribar,* 156 F.3d 673, 677 (6th Cir.1998) *and United of Omaha Life Ins. Co. v. Solomon,* 960 F.2d 31, 33 (6th Cir.1992). There appears to be no dispute that Plaintiffs have shown state action. Instead, Defendants argue Plaintiffs have not made an adequate showing of a constitutional violation.

### E. *First Amendment*

The First Amendment prohibits the government from "abridging the freedom of speech." U.S. Const. amend. I. The First Amendment, however, does not guarantee that all forms of protected speech may be heard on property owned or controlled by the government. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 46, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). Instead, "the State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." *Id.*

To determine whether the government has violated an individual's free speech rights, the Sixth Circuit employs a three-step analysis: (1) we ask whether the speech is protected under the First Amendment; (2) if so, using the public-forum doctrine, we ascertain whether the applicable forum is public or nonpublic; and (3) applying the appropriate standard for the forum, we ask whether the government's prohibition on speech passes muster under the First Amendment. *S.H.A.R.K. v. Metro Parks Serving Summit County,* 499 F.3d 553, 559 (6th Cir. 2007).

#### 1. *Protected speech*

The parties agree that the proposed speech—a press conference and rally—is protected speech under the First Amendment.

#### 2. *Nature of the forum*

There are three types of public fora: "the traditional public forum, the public forum created by government designation, and the nonpublic forum." *Jobe v. City of Catlettsburg,* 409 F.3d 261, 266 (6th Cir.2005), *citing Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.,* 473 U.S. 788, 802, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985).

"A traditional public forum is a place 'which by long tradition or by government fiat has been devoted to assembly and debate,' such as a street or a park." *Kincaid v. Gibson,* 236 F.3d 342, 348 (6th Cir.2001), *quoting Perry,* 460 U.S. at 45, 103 S.Ct. 948. The government can exclude a speaker from a traditional public forum "only when the exclusion is necessary to serve a compelling state interest and the exclusion is narrowly drawn to achieve that interest." *Cornelius,* 473 U.S. at 800, 105 S.Ct. 3439.

The second type of forum has been alternatively described as a "limited public forum," and as a "designated public forum." *Kincaid,* 236 F.3d at 348 (citations omitted); *see also Cornelius,* 473 U.S. at 802, 105 S.Ct. 3439 (explaining that the government may create a public forum by its designation of "a place or channel of communication for use by the public at large for assembly and speech, for use by certain speakers, or for the discussion of certain subjects."). As this Court has recently explained, the Sixth Circuit uses the terms "designated public forum" and "lim-

ited public forum" interchangeably. *Citizens for Community Values, Inc. v. Upper Arlington Public Library Bd. of Trustees,* 2008 WL 3843579, *5 (S.D.Ohio 2008) (slip op.). However, the Sixth Circuit applies differing levels of scrutiny for each. *Id.* Where there is a designated public forum, the same standards apply as apply to traditional public fora. *Id., citing Pouillon v. City of Owosso,* 206 F.3d 711, 715 (6th Cir.2000). Where the forum has been open to just certain categories of speakers and subjects, the Sixth Circuit applies a lesser level of scrutiny. *Id.* In such instances, government restrictions on speech must be viewpoint-neutral and reasonable in light of the purpose of the forum. *Id., citing Good News Club v. Milford Cent. Sch.,* 533 U.S. 98, 106–107, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001); *see also United Food & Commercial Workers Local 1099 v. City of Sidney,* 364 F.3d 738, 750 (6th Cir.2004) (explaining that where the state reserves fora "for certain groups or for the discussion of certain topics," government restrictions on speech must be reasonable and viewpoint neutral, which are the same standards that apply to restrictions on speech in nonpublic forums).

Finally, where there is a nonpublic forum, the government may control access "based on subject matter and speaker identity so long as the distinctions drawn are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Kincaid,* 236 F.3d at 348, *citing Cornelius,* 473 U.S. at 806, 105 S.Ct. 3439; *Perry,* 460 U.S. at 46, 103 S.Ct. 948.

Plaintiffs argue that Defendants have created either a limited or designated public forum inside City Hall. Defendants argue that this area is a nonpublic forum.

When determining the nature of the forum, the "touchstone of [a court's] analysis is whether the government intended to open the forum at issue." *Kincaid,* 236 F.3d at 348–49 (citations omitted). "To determine whether the government intended to create a limited public forum, we look to the government's policy and practice with respect to the forum, as well as to the nature of the property at issue and its 'compatibility with expressive activity.'" *Id., quoting Cornelius,* 473 U.S. at 802, 105 S.Ct. 3439.

In Administrative Regulation # 5, the stated purpose of City Hall is to allow "City officials to exercise the rights and responsibilities specified in the Charter of the City of Cincinnati." However, Defendants' stated purpose regarding the use of the interior of City Hall, without more, is not dispositive. This Court must closely examine whether in practice Defendants have consistently enforced the written policy. *United Food & Commercial Workers Union v. Southwest Ohio Regional Transit Authority,* 163 F.3d 341, 352–53 (6th Cir.1998). The Court notes that a variety of events have been held by independent individuals and organizations who are not City officials. These events were open to the public, and were only related to the exercise of the rights and responsibilities of the City officials in the most general sense. The City official who sponsors an event is not required to be present at the event, and is often not present. It is clear that City officials use the interior of City Hall however and whenever they desire, without regard to any limitations. The current version of Administrative Regulation # 5 does nothing to alter this practice. City officials only need to give notice to the Facilities Management Division "as far in advance of the intended use as reasonably practicable."

In addition, the nature of the areas inside City Hall identified by Plaintiffs are compatible with expressive activity. In so

finding, the court is cognizant that the Supreme Court has warned that:

> In cases where the principal function of the property would be disrupted by expressive activity, the Court is particularly reluctant to hold that the government intended to designate a public forum. Accordingly, we have held that military reservations and jailhouse grounds do not constitute public fora.

*Cornelius,* 473 U.S. at 804, 105 S.Ct. 3439 (citations omitted). As this Court previously noted, the principle function of the lobby and stairs inside City Hall is to serve as an entrance to the building. However, supporters of the school tax levy issue were able to hold a large press conference and rally in this area. Such an event, held on an occasional basis, shows a compatibility with expressive activity. As the Sixth Circuit has instructed: "forum analysis must involve a careful scrutiny of whether the government-imposed restriction on access to public property is truly part of 'the process of limiting a nonpublic forum to activities compatible with the intended purpose of the property.'" *UFCW,* 163 F.3d at 351–52, quoting *Perry,* 460 U.S. at 49, 103 S.Ct. 948. Administrative Regulation # 5 does nothing to limit a City official from sponsoring such an event in any area inside City Hall, on any subject, at any time of the day. As the Sixth Circuit has explained: "if the 'concept of a designated open forum is to retain any vitality whatever,' we will hold that the government did not create a public forum only when its standards for inclusion and exclusion are clear and are designed to prevent interference with the forum's designated purpose." *Id.* at 352, *quoting Christ's Bride Ministries, Inc. v. Southeastern Pa. Transp. Auth.,* 148 F.3d 242, 251 (3d Cir.1998). Here the only clear restriction on access to the interior of City Hall is sponsorship of a City official. There is little about this restriction which would prevent interference with the forum's designated purpose of allowing City officials to exercise the rights and responsibilities under the Charter. While this Court previously found that the lobby and stairs inside City Hall are a nonpublic forum, in light of the evidence presented by Plaintiffs as to the use of this area, as well as the other areas inside City Hall, this Court finds that the inner front lobby and first floor staircase on the Plum Street side of City Hall, various conference rooms, and the basement lunchroom in City Hall are limited or designated public fora.

### 3. *Applicable standard for the forum*

The Court finds that the interior of City Hall has been open to one category of speakers-those speakers who have the sponsorship of a City official. Therefore, the lesser level of scrutiny is applicable, and Defendants' restriction on speech must be viewpoint-neutral and reasonable in light of the purpose of the forum. The sponsorship requirement is viewpoint-neutral on its face. Even though the City has stipulated that Administrative Regulation # 5 could be applied in such a manner as to discriminate on the basis of viewpoint, the issue of viewpoint discrimination is not before this Court. Plaintiffs have not sought a sponsor for their events, and therefore cannot claim a violation of the First Amendment on this basis.

However, the Court finds that the sponsorship requirement is not reasonably related to the purpose of the forum. The stated purpose of the forum is to allow City officials exercise their rights and responsibilities under the City Charter. The sponsorship requirement only minimally limits speakers and the topics to those related to the work of City officials.

Therefore, the Court concludes that Plaintiffs have shown a likelihood of success on the merits of their First Amendment claim to the extent that it is based upon a facial challenge under the public-forum doctrine.

4. ***Freedom of association***

The Supreme Court has recognized a First Amendment right to associate for the purpose of speaking, which it has termed a "right of expressive association." *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, 68, 126 S.Ct. 1297, 164 L.Ed.2d 156 (2006). The rationale is that "[t]he right to speak is often exercised most effectively by combining one's voice with the voices of others." *Id., citing Roberts v. United States Jaycees,* 468 U.S. 609, 622, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984).[9] The Supreme Court has also recognized that the freedom to associate "plainly presupposes a freedom not to associate." *Roberts,* 468 U.S. at 623, 104 S.Ct. 3244.

The Supreme Court uses a three-step process to analyze an expressive association claim. *Boy Scouts of America v. Dale,* 530 U.S. 640, 648, 120 S.Ct. 2446, 147 L.Ed.2d 554 (2000). First, the Court considers whether the group making the claim engaged in expressive association. *Id.* Second, the Court analyzes whether the governmental action at issue significantly affected the group's ability to advocate public or private viewpoints. *Id.* at 653, 120 S.Ct. 2446. Finally, the Court weighs the governmental interest implicated in the action against the burden imposed on the associational expression to determine if the governmental interest justified the burden. *Id.* at 656, 120 S.Ct. 2446.

Under this analysis, the Court finds that Plaintiffs engage in expressive association. The parties have stipulated that Plaintiff Miller is a member, supporter and agent of COAST. The parties have stipulated that Plaintiff COAST is an association of individuals organized as a political action committee devoted to advocacy on issues related to limits on the power and intrusiveness of government. Next, the Court finds that the Administrative Regulation # 5 significantly affects Plaintiffs' ability to advocate their public viewpoints in that they are unable to hold events inside City Hall.

At the final step, the Court must weigh Defendants' interest in having the sponsorship requirement in place against the burden imposed on Plaintiffs' associational expression. Government action impermissibly burdens the freedom to associate by "interfer[ing] with the internal organization or affairs of the group." *Roberts,* 468 U.S. at 623, 104 S.Ct. 3244. The Supreme Court has held that "[t]here can be no clearer example of an intrusion into the internal structure or affairs of an association than a regulation that forces the group to accept members it does not desire." *Id.* Where the presence of the unwelcome person "affects in a significant way the group's ability to advocate" its viewpoint, the government has infringed on the group's freedom of expressive association. *Dale,* 530 U.S. at 648, 120 S.Ct. 2446, *citing New York State Club Assn., Inc. v. City of New York,* 487 U.S. 1, 13,

9. As the Supreme Court explained in *Roberts:* "An individual's freedom to speak, to worship, and to petition the government for the redress of grievances could not be vigorously protected from interference by the State unless a correlative freedom to engage in group effort toward those ends were not also guaranteed." *Roberts v. United States Jaycees,* 468 U.S. 609, 622, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984), *citing Citizens Against Rent Control/Coalition for Fair Housing v. Berkeley,* 454 U.S. 290, 294, 102 S.Ct. 434, 70 L.Ed.2d 492 (1981).

108 S.Ct. 2225, 101 L.Ed.2d 1 (1988). However, the freedom of expressive association is not absolute. *Id.* The right of expressive association "may be overridden 'by regulations adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms.'" *Id., quoting Roberts,* 468 U.S. at 623, 104 S.Ct. 3244.

Administrative Regulation # 5 forces groups, such as COAST, to accept members it does not desire. Specifically, it requires a group to find a City official willing to support its viewpoint in order to garner sponsorship of an event or "assemblage." The Court finds that this forced sponsorship affects in a significant way COAST's ability to advocate its viewpoint because without sponsorship, Plaintiffs are not permitted to hold an event inside City Hall. Therefore, Defendants have infringed on the group's freedom of expressive association. The Court must next determine whether this right may be overridden. That inquiry centers on Defendants' compelling interest. Administrative Regulation # 5 states that Facilities Management is to ensure that the use of the interior of City Hall does not create security problems, unreasonable interference with ingress and egress from City Hall, or unreasonable interference with the other official uses occurring inside City Hall. Based on the foregoing, the Court finds that Defendants have a compelling interest in controlling the use of the interior of City Hall so that City officials are permitted to exercise their rights and responsibilities under the Charter.

However, the Court finds that there are means significantly less restrictive of associational freedoms by which Defendants could control the use of the interior of City Hall. Currently, the only means by which an individual or group may use the interior of City Hall is by finding a sponsor for their event. Therefore, an individual or group has no other avenue other than associating themselves with a City official if they want to hold an event inside City Hall. Therefore, the Court finds that the Plaintiffs have shown a likelihood of success on the merits of their freedom of expressive association claim.

### F. *Equal Protection*

A statute challenged on equal protection grounds will be subject to strict scrutiny when the statute involves a "suspect" classification or has an impact on a "fundamental" right. *Lac Vieux Desert Band of Lake Superior Chippewa Indians v. Michigan Gaming Control Bd.,* 172 F.3d 397, 410 (6th Cir.1999), *citing Clark v. Jeter,* 486 U.S. 456, 461, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988). The First Amendment right to free speech and freedom of association are such fundamental rights. *Police Dep't of Chicago v. Mosley,* 408 U.S. 92 & n. 8, 101, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972); *see Brown v. Alexander,* 718 F.2d 1417, 1425 (6th Cir.1983) (stating that the freedom of association is a fundamental First Amendment right). Because First Amendment rights are impacted by Administrative Regulation # 5, strict scrutiny is appropriate.

Strict scrutiny requires the government "to show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Perry,* 460 U.S. at 45, 103 S.Ct. 948. While Defendants have a compelling state interest in controlling the use of the interior of City Hall, the Court finds that Administrative Regulation # 5 is not narrowly drawn to achieve that end. Administrative Regulation # 5 provides no guidance as to how Facilities Management is to ensure that the use of the interior of City Hall does not create security prob-

lems, unreasonable interference with ingress and egress from City Hall, or unreasonable interference with the other official uses occurring inside City Hall.

Based on the foregoing, the Court finds that Plaintiffs are likely to succeed on the merits of their Equal Protection claim.

G. ***Due Process***

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. Plaintiffs' due process claim is based upon vagueness and overbreadth doctrines. Plaintiffs argue that Administrative Regulation # 5 lacks objective standards for deciding what speech is permitted inside City Hall.

Imprecise laws can be attacked on their face under two different doctrines. *City of Chicago v. Morales,* 527 U.S. 41, 52, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999). First, the overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when "judged in relation to the statute's plainly legitimate sweep." *Id., quoting Broadrick v. Oklahoma,* 413 U.S. 601, 612–615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Second, even if an enactment does not reach a substantial amount of constitutionally protected conduct, it may be impermissibly vague because it fails to establish standards for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests. *Id., citing Kolender v. Lawson,* 461 U.S. 352, 358, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983).

The overbreadth doctrine is "an exception to traditional rules of standing and is applicable only in First Amendment cases in order to ensure that an overbroad statute does not act to 'chill' the exercise of rights guaranteed protection." *Leonardson v. City of East Lansing,* 896 F.2d 190, 195 (6th Cir.1990), *citing NAACP v. Button,* 371 U.S. 415, 433, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). "Facial challenges to overly broad statutes are allowed not primarily for the benefit of the litigant, but for the benefit of society—to prevent the statute from chilling the First Amendment rights of other parties not before the court." *Sec'y of State of Md. v. Joseph H. Munson Co.,* 467 U.S. 947, 958, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984). Therefore, "[i]n order for a statute to be found unconstitutional on its face on overbreadth grounds, 'there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the court.'" *Leonardson,* 896 F.2d at 195, *quoting City of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 801, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). Plaintiffs have not identified any realistic danger that City Administrative Regulation # 5 will significantly compromise the First Amendment rights of parties not before the Court. As such, the Court finds that Plaintiffs have not shown a likelihood of success on the merits of this claim. *Accord Broadrick v. Oklahoma,* 413 U.S. 601, 613, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) (explaining that the overbreadth doctrine is "strong medicine" that is used "sparingly and only as a last resort.").

However, the Court does find merit in Plaintiffs' claim under the vagueness doctrine. Under the First Amendment, speakers are protected from arbitrary and discriminatory enforcement of vague standards. *National Endowment for the Arts v. Finley,* 524 U.S. 569, 588, 118 S.Ct. 2168, 141 L.Ed.2d 500 (1998). Due process requires that this Court hold a statute, ordinance, or resolution void for

vagueness "if its prohibitive terms are not clearly defined such that a person of ordinary intelligence can readily identify the applicable standard for inclusion and exclusion." *UFCW,* 163 F.3d at 358–59. In addition, "[t]he absence of clear standards guiding the discretion of the public official vested with the authority to enforce the enactment invites abuse by enabling the official to administer the policy on the basis of impermissible factors." *Id.* at 359. As the Sixth Circuit has explained:

> "Quite simply, the danger of censorship and of abridgment of our precious First Amendment freedoms is too great where officials have unbridled discretion over a forum's use." *Id., citing Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 553, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975). We will not presume that the public official responsible for administering a legislative policy will act in good faith and respect a speaker's First Amendment rights; rather, the vagueness "doctrine requires that the limits the [government] claims are implicit in its law be made explicit by textual incorporation, binding judicial or administrative construction, or well-established practice." *City of Lakewood v. Plain Dealer Publ'g Co.,* 486 U.S. 750, 770, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988).

*Id.*

The Court finds that the terms of Administrative Regulation # 5 are not clearly defined. The only direction the Regulation provides is that the purpose of the interior of City Hall is to allow City officials "to exercise the rights and responsibilities specified in the Charter of the City of Cincinnati." There are no clear standards which would guide a City official to judge whether a use fell within this specified purpose. As such, the Court finds that Plaintiffs are likely to succeed on the merits of their due process claim based upon the doctrine of vagueness.

The Court also finds that the remaining preliminary injunction factors weigh in favor of Plaintiffs. "The Supreme Court has unequivocally admonished that even minimal infringement upon First Amendment values constitutes irreparable injury sufficient to justify injunctive relief." *Newsom v. Norris,* 888 F.2d 371, 378 (6th Cir.1989). Additionally, if the plaintiff shows a substantial likelihood that the challenged law is unconstitutional, no substantial harm to others can be said to inhere in its enjoinment. *Deja Vu,* 274 F.3d at 400. Moreover, "it is always in the public interest to prevent violation of a party's constitutional rights." *Connection Distributing Co. v. Reno,* 154 F.3d 281, 288 (6th Cir.1998), *quoting G & V Lounge, Inc. v. Michigan Liquor Control Comm'n,* 23 F.3d 1071, 1079 (6th Cir.1994). Therefore, the Court concludes that Plaintiffs are entitled to a preliminary injunction enjoining the application of Administrative Regulation # 5. Accordingly, the Court enjoins Defendants from applying Administrative Regulation # 5 to requests for use of the interior of City Hall.

### H. *Qualified immunity*

In their Motion to Dismiss, Defendants argue that to the extent that the individual defendants are named in their individual capacities, they are entitled to have those claims dismissed based on qualified immunity. However, the parties subsequently stipulated that Defendants Dohoney and Koopman are sued only in their official capacities. (Doc. 28, ¶ 66) Therefore, Defendants' Motion to Dismiss is DENIED on the basis of qualified immunity.

## III. *CONCLUSION*

Based on the foregoing, it is hereby **ORDERED** that:

1. Defendant's Motion to Dismiss the First Amended Complaint (Doc. 19) is **DENIED as MOOT.**

2. Motion in *Limine* to Exclude Plaintiffs' Expert (Doc. 25) is **DENIED as MOOT;**

3. Motion to Strike the Affidavit of Plaintiffs' Proposed Expert (Doc. 37) is **DENIED;**

4. Plaintiffs' Motion for Preliminary Injunction (Doc. 2) is **GRANTED;** and

5. Motion to Dismiss the Second Amended Complaint (Doc. 24) is **DENIED.**

**IT IS SO ORDERED.**